# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No. 23-545

GEOSURFACES SOUTHEAST, INC. and )
POLYLOOM CORPORATION )
OF AMERICA d/b/a TENCATE GRASS, )
                               )
       Plaintiffs, )
                               )
v. )
                               )
KENNETH D. SMITH and )
BEYNON SPORTS SURFACES, INC., )
                               )
       Defendants. )

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, GeoSurfaces SouthEast, Inc. ("GeoSurfaces") and Polyloom Corporation of America d/b/a TenCate Grass ("TenCate") (collectively, "Plaintiffs"), file this Complaint for Injunctive Relief and Damages against Defendants Kenneth D. Smith ("Smith") and Beynon Sports Surfaces, Inc. ("Beynon") (collectively, "Defendants"), alleging as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     GeoSurfaces is a Delaware corporation with its principal place of business located at 1131 Broadway Street, Dayton, TN 37321.

2.     TenCate is a Delaware corporation with its principal place of business located at 1131 Broadway Street, Dayton, TN 37321.

3.     Defendant Smith is, upon information and belief, an individual resident of Forsyth County, North Carolina, residing at 7135 Kenbridge Drive, Clemmons, NC 27012, where he may be served with process.

4.     Defendant Beynon is a Maryland corporation with its principal place of business at 16 Alt Road, Hunt Valley, Maryland 21030. Defendant Beynon is registered to conduct business in the State of North Carolina and may be served with process via its agent, CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, NC 27615.

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), *et seq.*, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. Additionally and/or in the alternative, this Court has jurisdiction over Plaintiffs' claims because, pursuant to 28 U.S.C. § 1331, they assert a federal question under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*.

6.     This Court has personal jurisdiction over each Defendant. Defendant Smith is a citizen of North Carolina, and Defendant Beynon consents to this Court's exercise of jurisdiction by purposefully availing itself of the privilege of conducting activities in North Carolina. Additionally, Section 13 of the Sales Employment Agreement executed by Smith and GeoSurfaces (the "Agreement," attached as **Exhibit A**) expressly provides that this Court has jurisdiction over the parties.

7.     Venue is proper in this Court. Section 13 of the Agreement expressly provides that that venue is proper in the federal courts of North Carolina, and, pursuant to 28 U.S.C. § 1391, venue is proper in this Court because defendant Smith resides in this judicial district.

## FACTUAL ALLEGATIONS

8.      GeoSurfaces, is a market leader in the design, development, construction, and installation of high performing sports surfaces, focusing on the provision of artificial turf and running track surfaces primarily in the southeastern United States. GeoSurfaces' clients include higher education institutions, professional sports teams, and other athletic facility providers. GeoSurfaces utilizes its proprietary research and development, and that of its parent company TenCate, to design, sell, and install durable, aesthetically pleasing, and innovative running track surfaces.

9.      Beynon is also in the same business of providing artificial running track surfaces in the southeastern United States. Beynon directly competes with GeoSurfaces.

10.     On or about October 1, 2019, GeoSurfaces hired Smith. At all times during his employment with GeoSurfaces, Smith was based out of GeoSurfaces' Mooresville, North Carolina location.

11.     GeoSurfaces hired Smith as Vice President of Sales for its South East Regional Sales team to coordinate sales of artificial turf and running track surfaces primarily in North Carolina, South Carolina, Virginia, Georgia, and Tennessee. Smith's employment was governed by the Agreement dated October 1, 2019, of which TenCate is an express beneficiary as GeoSurfaces' parent company. [*See generally* **Exhibit A**]. The Agreement was renewed on or about December 12, 2022.

12.     Smith reported directly to the President of GeoSurfaces and was responsible for, among other duties and responsibilities:

3

(a)     Soliciting product orders for GeoSurfaces, and marketing and selling GeoSurfaces products;

(b)     providing a consistently high quality of service to existing customers; responding promptly to requests for price quotes, delivery, and after-sale services; and introducing new products to existing and potential customers whenever possible;

(c)     marketing and developing new business prospects, and building and maintaining an active, high potential prospect list;

(d)     providing regular updates to GeoSurfaces; and

(e)     never withholding information from GeoSurfaces that could have a detrimental impact on the company.

[*See* **Exhibit A**, Section 2].

13.     As Vice President of Sales, Smith was responsible for developing, growing, and supervising GeoSurfaces' relationships with its many customers across the Southeast. Smith was primarily responsible for maintaining crucial customer relationships by calling on customers physically at their locations, by telephone, and by electronic communication; hosting customers at GeoSurfaces' facility; and entertaining customers.

14.     As such, Smith necessarily had direct access to and use of GeoSurfaces' and TenCate's confidential and proprietary business and customer information, as well as their financial resources. Smith was allowed to and, in fact, did develop strong relationships with numerous customers and customer prospects of GeoSurfaces and TenCate across the southeastern United States.

4

15. During his employment with GeoSurfaces, Smith was required to and actually undertook material contact with GeoSurfaces' prospective and actual customers throughout the southeastern United States.

16. As an employee and executive of GeoSurfaces, Smith was provided with access to Plaintiffs' confidential and/or trade secret information, including, but not limited to, Plaintiffs' research and development data, including information regarding the customers, customer preferences, prospective and actual customer contracts and arrangements with Plaintiffs', policies, practices, operating processes, marketing strategies and financials not generally available to the public, which if used or developed by others, could irreparably damage the ability of the Plaintiffs to compete in the marketplace (collectively "Confidential Information").

17. Specifically and most concerning, Smith had access to GeoSurfaces' sensitive priority pricing structures and information for particular customers, and to GeoSurfaces' estimating programs for all of its athletic systems. This includes, without limitation, GeoSurfaces' SalesForce database, which tracks all of its existing customer projects and all of the projects that are in the bidding and contracting phase, along with related bid and contract information; GeoSurfaces' Quote Calculator platform, which utilizes a proprietary formula to determine the costs of all projects with priority pricing and confidential margin information; GeoSurfaces' marketing information and strategy reports on market direction and which clients to target; GeoSurfaces' OneDrive platform, where entire project files are kept for both Smith's and other salespersons' projects, and which

5

contains quotes and proprietary pricing; and detailed knowledge of GeoSurfaces' proprietary product installation processes.

18.     Plaintiffs have undertaken significant efforts to maintain the secrecy of their Confidential Information and trade secrets, including, but not limited to, requiring employees, such as Smith, and third-parties to sign confidentiality and/or nondisclosure agreements; limiting access to Confidential Information and trade secrets to those on a need to know basis; password protecting Confidential Information and trade secrets; requiring employees to comply with GeoSurfaces' consistently-enforced confidentiality policy; encouraging and reminding employees to maintain the secrecy and limit the use of Confidential Information and trade secrets; and subjecting employees who fail to do so to discipline.

19.     On October 1, 2019, in consideration of and connection with Smith's hire as Vice President of Sales and due to his access to Plaintiffs' actual and prospective customers, employees, and Confidential Information and trade secrets in that role, Smith entered the Agreement. [**Ex. A**].

20.     The Agreement contains certain restrictive covenants addressed more thoroughly below, to which Smith agreed to be bound during his employment with GeoSurfaces and for a period thereafter.

21.     Section 13 of the Agreement contains a valid North Carolina choice of law provision.

22.     The restrictive covenants are valid and enforceable under North Carolina law.

6

23.     Pursuant to the Agreement, Smith promised that he would maintain the confidentiality of Plaintiffs' Confidential Information and trade secrets as follows:

> **8.     Confidentiality and Non-Disclosure. Employee acknowledges that he will hold positions of trust and confidence with Company. While this Agreement is in effect, Employee acknowledges and agrees he will receive or be exposed to trade secrets, material or other information concerning research and development of Company as well as of the worldwide TenCate Grass organization, as well as customers, clients, policies, practices, operating processes, marketing strategies and financial information of the Company and/or the worldwide TenCate Grass organization, that is confidential and not generally available to the public and which if used or developed, could irreparably damage the ability of each to compete in the marketplace (collectively "Confidential Information"). During his employment hereunder and for the one-year period following the effective date of his termination, Employee agrees not to possess, use or disclose to any person, business, corporation, or entity such Confidential Information without prior written consent of the President of the Company, except as may be necessary in the performance of his duties for the Company hereunder. The restrictions in this Paragraph 7 will not apply to information that (A) is or becomes generally available to the public other than as a result of an impermissible disclosure hereunder by Employee or otherwise enters the public domain through lawful means; (B) is lawfully communicated to Employee by a third party, free from any known confidentiality obligation, subsequent to the time of communication thereof by, through or on behalf of the Company; (C) has been independently developed and disclosed by others without violating this Agreement or the legal rights of any party; or (D) Employee is required to disclose by court order, statute, law or regulation; provided, in the event Employee is served with any subpoena, discovery request, civil investigative demand, or other administrative and/or legal process for such Confidential Information.**

[**Ex. A**, ¶ 7].

7

24.     Also, in order to protect Plaintiffs from unfair competition and prevent the unauthorized disclosure of its Confidential Information and trade secrets, Smith agreed that he would not engage in certain activities competitive with Plaintiffs for a period of one (1) year following the termination of his employment. Specifically, Smith agreed as follows:

> **10.     <u>Non-Competition Clause.</u> In order to protect the Company from unfair competition and prevent the unauthorized disclosure of its Confidential Information, Employee agrees that during his employment and for a period of one (1) year immediately following termination of his employment, he will not compete with Company and/or the worldwide TenCate Grass organization in the south eastern United States, whether on his own behalf or on behalf of any person, firm, partnership, association, corporation, entity, enterprise or business organization, by performing job duties the same as or substantially similar to the duties that he performed for the Company during the last twelve (12) months of his employment with the Company. Employee understands that this restriction is limited to work with competitor companies of the Company and/or the worldwide TenCate Grass organization that provide products and services similar to those offered by such on the date of Employee's termination of employment with Company.**

[**Ex. A**, ¶ 10].

25.     Additionally, through the Agreement, Smith agreed to certain restrictions with respect to Plaintiffs' customers as follows:

> **9.     <u>Non-Solicitation of Customers.</u> During his employment hereunder and for the one (1) year following the effective date of his termination, Employee agrees not, on his own behalf or for any other person, corporation, partnership, firm, entity or personal business to solicit, call upon or initiate communications or contact with any existing customer of the Company with whom he had contact or managed during the last twelve (12) months of his employment with the Company (or its predecessor) with a view or purpose to solicit, provide research and development information, market, sell, transport or otherwise provide products or perform personal services the same as or similar to those Employee managed, provided or assisted in providing during the last twelve**

**(12) months of his employment with the Company. This provision shall apply only to those customers to whom Employee and any person directly managed or supervised by Employee marketed, solicited, sold or otherwise provided services during such 12-month period prior to the end of Employee's employment.**

[**Ex. A**, ¶ 9].

26.     Finally, pursuant to the Agreement, Smith committed not to solicit Plaintiffs'

employees to leave their employment to compete with Plaintiffs as follows:

> **8.     Non-Solicitation of Employees. During his employment hereunder and for the one-year period following the effective date of his termination, Employee shall not, on his own behalf or for any other person, corporation, partnership, firm, entity or personal business, solicit or recruit any executive, manager, or employee of the Company and/or the worldwide TenCate Grass organization with whom he had contact to leave employment for the purpose of competing with the Company as an employee or agent of a business that provides products or services similar to those offered by the Company. This provision applies to executives, managers and employees performing positions and services similar to those they performed over the last twelve (12) months of their employment with the Company.**

[**Ex. A**, ¶ 8].

27.     Plaintiffs have legitimate business interests to justify these reasonable

restrictions, including the protection of their competitive position in the marketplace; the

protection of their confidential information and/or trade secrets; the protection of their valued

prospects and customers; the stability of their workforce; and the specialized training they

provides their employees.

28.     Smith acknowledged the necessity, validity, reasonableness, and

enforceability of these provisions, as well as Plaintiffs' right to seek injunctive and other

relief in the event of a breach, as follows:

9

**11.  Remedies for Breach.** If at any time Employee violates the non-competition, non-solicitation, and/or confidentiality terms of this Agreement, the Company reserves and shall have the right to file legal action against Employee, to immediately stop or recover any or all of the payments made to Employee following the termination of his employment … and to seek any other applicable damages and equitable relief. In addition, Executive acknowledges and agrees that the restrictions contained in Paragraphs 7 through 10 of this Agreement are reasonable and necessary to protect the legitimate interests of the Company, and that any violation of such paragraphs, or any part thereof, will result in immediate and irreparable harm to the Company for which a remedy at law is inadequate. Upon any such breach or threatened breach, the Company shall be entitled as a matter of right to injunctive relief … and to enforce the specific performance of Employee's obligations under these provisions. The rights conferred upon the Company by the preceding shall not prevent it from recovering any form of monetary damages or other equitable relief available under applicable law.

[**Ex. A**, ¶ 11].

29.     On February 3, 2023, Smith informed GeoSurfaces that he was providing two weeks' notice and voluntarily leaving employment on or around February 16, 2023. Smith did not inform GeoSurfaces at this or any time about his current or future employment with Beynon.

30.     On or around March 8, 2023, Smith informed GeoSurfaces' Vice President of Business Development, Todd Penley, that he was actively employed with and performing sales-related services on behalf of Beynon in the southeastern United States in violation of the Agreement.

31.     Smith, on behalf of Beynon, has performed, and is performing job duties the same as or substantially similar to the duties that he performed for Plaintiffs. [**Ex. A**, ¶¶

2, 10]. Specifically, Smith, directly and by assisting others, has engaged, and is continuing to engage, in the sale, distribution, design, and/or installation of running track surfaces on Beynon's behalf.

32. Furthermore, Smith has performed, and continues to perform, job duties the same as or substantially similar to the duties that he performed for GeoSurfaces which, upon information and belief, include:

(a) Development of new customers for Beynon's running track surface products that are comparable to and competitive with Plaintiffs' products;

(b) marketing and selling to customers running track surface products that are comparable to and competitive with Plaintiffs' products;

(c) managing and/or training Beynon's sales personnel with respect to running track surface products; and

(d) assisting Beynon in the recruitment of skilled sales employees.

33. Additionally, Smith has engaged, and continues to engage, in the above-described activities on behalf of Beynon within the restricted territory, as that term is defined in the Agreement.

34. Specifically, on information and belief, Smith is based out of the Beynon location in Raleigh, North Carolina, a city in close proximity to Mooresville, North Carolina, where Smith reported and worked on behalf of Plaintiffs, and performs the above-described activities in the same states of the United States in which he was assigned to work by GeoSurfaces, developed customer relationships on behalf of GeoSurfaces, and effectuated sales of running track surface products on behalf of GeoSurfaces.

35.     By engaging in, and continuing to engage in, the above-described activities, Smith has directly violated, and is continuing to violate, the non-competition covenant contained in Section 10 of the Agreement. [**Ex. A**, ¶ 10].

36.     Since becoming employed by Beynon (and presumably before), Smith has, directly and by assisting others, contacted, solicited, communicated, and called upon one or more actual and prospective customers of GeoSurfaces with whom he had contact while employed as an employee for GeoSurfaces, in an effort to obtain their business on behalf of Beynon. Furthermore, Smith is currently continuing to engage in these activities on behalf of the Beynon.

37.     Specifically, Plaintiffs are aware of multiple clients with which GeoSurfaces had verbal commitments for new projects during Smith's employment who were subsequently solicited by Smith on behalf of Beynon.

38.     During Smith's employment, he was also involved in GeoSurfaces' active bidding on a project for prospective client and competitive track company Athens Academy, for which GeoSurfaces secured a verbal commitment. In regards to this particular project, Smith was provided with GeoSurfaces' detailed bid and project information during GeoSurfaces' weekly sales meetings and he also had direct access to the details regarding the Athens Academy project on GeoSurfaces' server. On behalf of Beynon, and utilizing GeoSurfaces' proprietary and confidential information, including GeoSurfaces' cost and pricing information, Smith, on behalf of Beynon, then underbid this project and obtained this business for Beynon. This constitutes an approximate profit loss of $40,000 to $50,000 to Plaintiffs.

39.     Also, in in regards to a project GeoSurfaces was actively seeking with Wofford College in Spartanburg, South Carolina while Smith was employed by GeoSurfaces, after Smith became employed by Beynon, Woffard advised GeoSurfaces that Smith had contacted them to solicit the same project for Beynon. In regards to this particular project, Smith was provided with GeoSurfaces' detailed bid and project information during GeoSurfaces' weekly sales meetings and he also had direct access to the details regarding the Woffard project on GeoSurfaces' server.

40.     Upon information and belief, Smith has, on behalf of Beynon, contacted other clients and business sources for GeoSurfaces since he became associated with Beynon in an effort to solicit and secure such business on behalf of Beynon.

41.     Through his past and continuing solicitation of Plaintiffs' actual and prospective customers, Smith has violated, and is continuing to violate, the customer non-solicitation covenant contained in Section 9 of the Agreement. [**Ex. A**, ¶ 9].

42.     Upon information and belief, Smith has used, and continues to use, Plaintiffs' Confidential Information and trade secrets to solicit Plaintiffs' actual and prospective customers and for other purposes in direct violation of the non-disclosure covenant in Paragraph 7 of the Agreement. [**Ex. A**, ¶ 7].

43.     Further, upon information and belief, Smith has disclosed, or will inevitably disclose, Plaintiffs' Confidential Information and trade secrets to Beynon in violation of Paragraph 7 of the Agreement. [*Id.*].

44.     Further, Smith recently contacted Anthony James, Community Development and Sales for GeoSurfaces to leave his employment with GeoSurfaces for

13

employment with Beynon, in breach of Section 8 of Smith's Employment Agreement with Plaintiffs. [**Ex. A,** ¶ 8].

45. Both Smith and Beynon knew or should have known that Smith owed certain post-employment obligations to Plaintiffs.

46. Specifically, Smith has actively inquired as to whether GeoSurfaces will enforce the Agreement against him and is aware of his past and continuing misconduct in violation of the Agreement.

47. Additionally, on or about February 22, 2023, Plaintiffs sent correspondence to both Smith at his residential address and to Beynon at its corporate headquarters and its address in North Carolina demanding that Smith comply with the restrictive covenants in the Agreement and cease any conduct that may constitute a breach of the Agreement.

48. Beynon is thus aware of Smith's past and continuing misconduct in violation of the Agreement, and it has condoned, ratified, and actively participated in such conduct.

49. As a direct result of Defendants' past and continued intentional wrongful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of actual and threatened misappropriation of their Confidential Information and trade secrets, damage to reputation and goodwill, loss of business opportunities, damage to relationships with actual and prospective customers and employees, loss of a stable workforce, and loss of market share.

50. Absent injunctive relief, Plaintiffs have no adequate remedy at law.

14

## COUNT I
### (Breach of Contract Against Smith – Non-Competition)

51. Plaintiffs incorporate the allegations set forth in the preceding 50 paragraphs as though fully set forth herein.

52. The Agreement, including the non-competition covenant contained in Paragraph 10 of the Agreement, is a valid and enforceable contract.

53. Plaintiffs have at all times complied with the Agreement.

54. By engaging in the conduct described above, Smith has breached the Agreement, including the non-competition covenant contained in Section 10 of the Agreement. [**Ex. A**, ¶ 10].

55. As a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer actual damages in an amount to be proven at trial.

56. Additionally, as a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm not compensable by money damages in addition to monetary damages.

## COUNT II
### (Breach of Contract Against Smith – Non-Solicitation of Customers)

57. Plaintiffs incorporate the allegations set forth in the preceding 56 paragraphs as though fully set forth herein.

58. The Agreement, including the non-solicitation of customers covenant contained in Paragraph 9 of the Agreement is a valid and enforceable contract. [**Ex. A**, ¶ 9]

59.     By engaging in the conduct described above, Smith has breached the Agreement, including the non-solicitation of customers covenant contained in Paragraph 9 of the Agreement. [**Ex. A**, ¶ 9].

60.     As a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer actual damages in an amount to be proven at trial.

61.     Additionally, as a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm not compensable by money damages in addition to monetary damages.

## COUNT III
### (Breach of Contract Against Smith – Non-Solicitation of Employees

62.     Plaintiffs incorporate the allegations set forth in the preceding 61 paragraphs as though fully set forth herein.

63.     By engaging in the conduct described above, Smith has breached the Agreement, including the non-solicitation of employees covenant contained in Paragraph 8 of the Agreement. [**Ex. A**, ¶ 8].

64.     As a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer actual damages in an amount to be proven at trial.

65.     Additionally, as a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm not compensable by money damages in addition to monetary damages.

## COUNT IV
### (Breach of Contract Against Smith – Non-Disclosure of Confidential Information and Trade Secrets)

66.     Plaintiffs incorporate the allegations set forth in the preceding 65 paragraphs as though fully set forth herein.

67.     The Agreement, including the Confidentiality and Non-Disclosure covenant contained in Paragraph 7 of the Agreement, is a valid and enforceable contract.

68.     By engaging in the conduct described above, Smith has breached the Agreement, including the Confidentiality and Non-disclosure covenant contained in Paragraph 7 of the Agreement. [**Ex. A**, ¶ 7].

69.     As a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer actual damages in an amount to be proven at trial.

70.     Additionally, as a direct and proximate result of Smith's breach of the Agreement, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm not compensable by money damages in addition to monetary damages.

## COUNT VI
### (Violation of the Federal Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*) Against All Defendants)

71.     Plaintiffs incorporate the allegations set forth in the preceding 70 paragraphs as though fully set forth herein.

72.     Upon information and belief, Smith will or has used, disclosed, and misappropriated for his own benefit, or for the benefit of Beynon, the trade secrets owned by Plaintiffs, including, but not limited to, Plaintiffs' customer lists, customer contact

17

information, customer project preferences and active contractual terms, active project bids, and proprietary pricing structures, marketing strategies, and installation techniques.

73.     Plaintiffs derive independent economic value from their trade secrets not being generally known to, and not being readily ascertainable by proper means by, the public or any other person who can obtain economic value from their disclosure or use.

74.     The trade secrets misappropriated here also implicate interstate commerce. Plaintiffs market and sell their services to prospective and actual customers in multiple states throughout the Southeast. As stated, Smith, on behalf of Beynon, has misappropriated Plaintiffs' sensitive customer and product-related trade secrets to improperly solicit at least two projects.

75.     Plaintiffs have undertaken considerable efforts, which are reasonable under the circumstances, to maintain the secrecy of their trade secrets, including, but not limited to, requiring employees and third-parties to sign confidentiality and non-disclosure agreements, limiting access to confidential and trade secret information, password protecting confidential and trade secret information, requiring employees to comply with their consistently enforced confidentiality policy, and instructing employees to maintain the secrecy and limit the use of Plaintiffs' confidential and trade secret information.

76.     Plaintiffs' trade secrets can be used in the operation of a business and are sufficiently valuable and secret to afford an actual or potential economic advantage over their competitors.

77.     Both Defendants knew or should have known that such information constitutes Plaintiffs' confidential proprietary information and trade secrets, and despite

this knowledge, willfully and maliciously, with the intent to harm Plaintiffs' business, used, disclosed, and/or misappropriated Plaintiffs' trade secrets and confidential information to their unjust enrichment.

78.     Based on these actions, Defendants misappropriated, and continue to misappropriate, Plaintiffs' trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*

79.     As a consequence of Defendants' unlawful conduct, Plaintiffs suffered damages and will continue to suffer immediate and irreparable harm to their business and goodwill for which they have no adequate remedy at law.

80.     Additionally, Plaintiffs are entitled to punitive damages and attorneys' fees because of Defendants' willful and malicious misappropriation.

## COUNT VII
### (Tortious Interference Against Beynon)

81.     Plaintiffs incorporate the allegations set forth in the preceding 80 paragraphs as though fully set forth herein.

82.     Beynon has knowledge of the Agreement and Smith's contractual obligations to Plaintiffs.

83.     On information and belief, Beynon intentionally and improperly encouraged and induced Smith to breach the restrictive covenants in the Agreement, which are valid and enforceable.

84.     Beynon's conduct caused Smith to breach his contractual obligations to Plaintiffs.

85. Beynon's conduct was and is intentional and improper.

86. As a direct and proximate result of Beynon's improper and intentional interference with Smith's contract with Plaintiffs, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial.

87. Additionally, as a direct and proximate result of Beynon's improper and intentional interference with Smith's contract with Plaintiffs, Plaintiffs have suffered and will continue to suffer immediate and irreparable harm to their business and goodwill for which they have no adequate remedy at law.

## COUNT VIII
### (Injunctive Relief Against All Defendants)

88. Plaintiffs incorporate the allegations set forth in the preceding 87 paragraphs as though fully set forth herein.

89. Plaintiffs have at least a reasonable likelihood of success on the merits of their claims in this action.

90. The misconduct of Defendants will cause irreparable harm to Plaintiffs for which they cannot be compensated adequately in damages, in the form of actual and threatened misappropriation of their Confidential Information and trade secrets, damage to reputation and goodwill, loss of business opportunities, damage to relationships with actual and prospective customers and employees, and loss of market share. Plaintiffs also cannot be compensated adequately in damages for the loss of business caused by Defendants.

91. Plaintiffs do not have an adequate remedy at law.

92.     The injunctive relief sought by Plaintiffs will not disserve the public interest. The public interest in enforcing valid restrictive covenants and protecting trade secrets is well-established under both North Carolina and federal law, including in the federal Defend Trade Secrets Act.

93.     The Agreement specifically acknowledges that injunctive relief is appropriate under circumstances such as those alleged herein.

94.     The balance of equities favors the entry of injunctive relief. Courts may enter injunctive relief to preserve the status quo until a final hearing.

95.     Injunctive relief will preserve the status quo pending a trial on the merits.

96.     Plaintiffs are thus entitled to preliminary and permanent injunctive relief.

## COUNT IX
### (Punitive Damages Against All Defendants)

97.     Plaintiffs incorporate the allegations set forth in the preceding 96 paragraphs as though fully set forth herein.

98.     Defendants' actions, as described herein, demonstrate gross and willful wrong, actual malice, oppression, insult, indignity, and reckless disregard of Plaintiffs' rights.

99.     As a result, Plaintiffs are entitled to punitive damages from Defendants in an amount to be determined at trial.

WHEREFORE, Plaintiffs request that judgment be made and entered in its favor and against Defendants as follows:

I. An Injunction enjoining Defendants, directly or indirectly, alone or in concert with others, from:

a. As to Smith, engaging in any activities on behalf of Beynon or any other person or entity that violates the non-competition provision contained in Paragraph 10 of the Agreement;

b. As to Beynon, employing Smith in any capacity, including, but not limited to, in a sales and/or sales manager capacity, that violates the non-competition provision contained in Paragraph 10 of the Agreement;

c. As to all Defendants, possessing, using, disclosing, or transmitting Plaintiffs' Confidential Information and trade secrets as specifically identified herein, including, but not limited to, trade secrets, material or other information concerning research and development of either GeoSurfaces or TenCate, or both, including that related to current or future customers, clients, policies, practices, operating processes, marketing strategies and financials not generally available to the public; and providing that all original documents, records, materials, or devices containing or reflecting such information, and all copies thereof, be returned to Plaintiffs;

II. Judgment against Defendants for their violation of the Defend Trade Secrets Act and an award of damages, punitive damages, costs and attorneys' fees to Plaintiffs, all in an amount to be proven at trial;

III. Judgment against Smith for his breach of contract and an award of damages to Plaintiffs in an amount to be proven at trial;

IV.    Judgment against Beynon for their tortious interference with contract and an award of damages to Plaintiffs in an amount to be proven at trial;

V.    An award of punitive damages; and

VI.    An award of attorneys' fees and costs;

Respectfully submitted this 30th day of June, 2023.


/s/ Mignon A. Lunsford
Mignon A. Lunsford
North Carolina Bar No. 46220
mlunsford@burr.com

BURR & FORMAN LLP
434 Fayetteville Street
Suite 1730
Raleigh, North Carolina 27601
**T** ((919)334-4709

**Local Civil Rule 83.1(d) Attorney for Plaintiffs**

/s/ Jon M. Gumbel
Jon M. Gumbel
Georgia Bar No. 315195
jgumbel@burr.com

BURR & FORMAN LLP
171 17th Street, NW, Suite 1100
Atlanta, GA 30363
**T** (404) 815-3000
**F** (404) 817-3244

**Notice of Special Appearance Pending Attorney for Plaintiffs**

23