# EXHIBIT A

## SALES EMPLOYMENT AGREEMENT

This SALES EMPLOYMENT AGREEMENT ("Agreement") is by and between GeoSurfaces Inc. (dba Medallion Sports Surfaces), a Delaware corporation (the "Company"), and Kenneth D. Smith ("Employee"), residing at 7135 Kenbridge Drive, Clemmons, NC 27012, and is effective as of October 1, 2019.

The Company desires to employ Employee as South East Regional Sales under the terms established by this Agreement; and Employee desires to accept employment with the Company under the terms and conditions of this Agreement, which encompasses Employee providing assurances for the protection of the business, goodwill, trade secrets and Confidential Information (as defined in Paragraph 6 below) of the Company and the worldwide TenCate Grass organization.

This Agreement represents the entire agreement between the parties relating to Employee's employment with the Company. This Agreement overrides, replaces and supersedes all prior agreements and contracts between Employee and the Company, or its predecessor or affiliates, pertaining to the subject matter hereof, whether in written or oral agreement.

In consideration of the Company's employment of Employee and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Company and Employee agree as follows:

1. **Employment.** Employee shall render his services exclusively to the Company during the Term of Agreement (as defined in Paragraph 3 below), and shall devote his full business time and energy to the performance of those duties and responsibilities related to such employment, including using his best efforts, skills and abilities to promote the Company's best interests; provided, however, that Employee will be permitted: (i) to act or serve as a director, trustee, committee member, or principal of any type of business, civic, or charitable organization as long as such activities are disclosed to the Company and do not create a conflict of interest or otherwise interfere with the performance of Employee's duties and responsibilities to the Company, and (ii) to make and manage personal business investments, including passive ownership interests in other corporations or businesses, as long as such investments and/or management activities do not create a conflict of interest or otherwise interfere with the performance of Employee's duties and responsibilities to the Company. Employee shall initially be designated as the Company's Vice President, Sales. In his employment capacity hereunder, Employee will report directly to the President of GeoSurfaces, Inc. or his designee. Employee shall perform such duties as are

customary for his position and/or as may be delegated to him from time to time. Employee agrees that he will comply with all reasonable and lawful policies and ethical standards of the Company that are appropriately applicable to his position, as may be established by the Company from time to time.

2. Duties and Responsibilities.

   a. The employee shall be responsible for the performance of the following duties and responsibilities:

      i. Solicitation and forwarding of orders to the Employer for acceptance. The employee understands and agrees that he shall not have the authority to accept any orders on behalf of employer, nor enter into any agreement or incur any liability on the behalf of the employer;

      ii. Providing a consistently high quality of service to existing customers, responding promptly to requests for price quotes, delivery, after-sale service and introducing new products to existing and potential customers whenever possible;

      iii. Marketing and developing new business prospects, building and maintaining an active, high potential prospect list in SalesForce;

      iv. Marketing and Selling Medallion (Geo Surfaces) Products;

      v. Keeping regular accurate records and reports with respect to sales and prospects in the Employer's tracking system which is currently SalesForce;

      vi. Give regular project updates to Employer and never withhold information from management that could have a detrimental impact on the company in any way;

      vii. Meeting such sales quotas, benchmarks and objectives approved by the Employer;

      viii. SalesForce.com. Proper use of SalesForce.com is mandatory per Employee's Duties and Responsibilities. Failure to use SalesForce.com properly will have an adverse effect on Employer's ability to properly forecast sales and to retain proprietary sales information.

b. Employee's ongoing training will involve:

   i. Continuing to shadow the V.P of Business Development

   ii. Day to day interaction with fellow workers, vendors, sub-contractors, architects, engineers, clients and competitors

   iii. Intuitive research on relative products and practices to our market

   iv. Plant visit to Tencate/Greenfields/Challenger

   v. Occasionally working in the field to experience all types of installations

3. <u>Term of Agreement.</u> The Term of Agreement shall be for one (1) years beginning from the Effective Date specified above, unless terminated sooner as provided in Paragraph 6 of this Agreement. This Agreement shall automatically renew for additional periods of one (1) year unless either party sends a written notice to the other at least 90 days prior to the end of the then existing period stating its intent not to renew.

4. <u>Compensation.</u> Employee's compensation during the term of this Agreement or any renewal period shall be as provided in Annex A, as amended by the Parties from time-to-time.

5. <u>Benefits.</u> Employee may participate in all Company group medical, dental, vision, disability and life insurance plans and any changes to those plans during the Term of Agreement. Additional benefits, if any, are provided in Annex A.

6. <u>Termination of Agreement.</u> Nothing in this Agreement shall be deemed to change to change the "**AT WILL**" nature of the employment relationship between the Company and Employee. Either Company or Employee may terminate this agreement at any time and for any reason.

7. <u>Confidentiality and Non-Disclosure.</u> Employee acknowledges that he will hold positions of trust and confidence with the Company. While this Agreement is in effect, Employee acknowledges and agrees he will receive or be exposed to trade secrets, material or other information concerning research and development of the Company as well as of the worldwide TenCate Grass

Page 3 of 9

Case 1:23-cv-00545-TDS-JLW   Document 1-1   Filed 06/30/23   Page 4 of 13

organization, as well as customers, clients, policies, practices, operating processes, marketing strategies and financial information of the Company and/or the worldwide TenCate Grass organization, that is confidential and not generally available to the public and which if used or developed, could irreparably damage the ability of each to compete in the marketplace (collectively "Confidential Information"). During his employment hereunder and for the one-year period following the effective date of his termination, Employee agrees not to possess, use or disclose to any person, business, corporation or entity such Confidential Information without prior written consent of the President of the Company, except as may be necessary in the performance of his duties for the Company hereunder. The restrictions in this Paragraph 7 will not apply to information that (A) is or becomes generally available to the public other than as a result of an impermissible disclosure hereunder by Employee or otherwise enters the public domain through lawful means; (B) is lawfully communicated to Employee by a third party, free of any known confidentiality obligation, subsequent to the time of communication thereof by, through or on behalf of the Company; (C) has been independently developed and disclosed by others without violating this Agreement or the legal rights of any party; or (D) Employee is required to disclose by court order, statute, law or regulation; provided, in the event Employee is served with any subpoena, discovery request, civil investigative demand, or other administrative and/or legal process for such Confidential Information, to the extent legally permissible, Employee shall immediately forward a copy of same to the Company and will reasonably cooperate with the Company and/or the worldwide TenCate Grass organization (at their sole expense) in any efforts to maintain the confidentiality of such Confidential Information. This restriction shall not limit or affect any whistleblower rights under applicable laws.

18 U.S.C. § 1832 *et seq.* provides limited immunity to certain disclosures that otherwise would be considered trade secret misappropriation, provided any such disclosure: (A) is made (i) in confidence to a Federal, State, or local government either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Employee acknowledges and agrees the foregoing notice meets the Company's notification requirements of 18 USC § 1832 *et seq.* and, with respect to any and all subsequent legal proceedings between the parties, Employee shall not contest either receipt of such notice, the sufficiency of such notice, or both, and Employee further waives any and all defenses pursuant to 18 USC § 1832 *et seq.* arising out of relating to the receipt and/or sufficiency of such notice.

8.  <u>Non-Solicitation of Employees.</u> During his employment hereunder and for the one-year period following the effective date of his termination, Employee shall not, on his own behalf or for any other person, corporation, partnership, firm, entity or personal business, solicit or recruit any executive, manager or employee of the Company and/or the worldwide TenCate Grass organization with whom he had contact to leave employment for the purpose of competing with the Company as an employee or agent of a business that provides products or services similar to those offered by the Company. This provision applies to executives, managers and employees performing positions and services similar to those they performed over the last twelve (12) months of their employment with the Company.

9.  <u>Non-Solicitation of Customers.</u> During his employment hereunder and for the one-year period following the effective date of his termination, Employee agrees not, on his own behalf or for any other person, corporation, partnership, firm, entity or personal business, to solicit, call upon or initiate communications or contact with any existing customer of the Company with whom he had contact or managed during the last twelve (12) months of his employment with the Company (or its predecessor) with a view or purpose to solicit, provide research and development information, market, sell, transport or otherwise provide products or perform personal services the same as or similar to those Employee managed, provided or assisted in providing during the last twelve (12) months of his employment with the Company. This provision shall apply only to those customers to whom Employee and any person directly managed or supervised by Employee marketed, solicited, sold or otherwise provided services during such 12-month period prior to the end of Employee's employment.

10. <u>Non-Competition Clause.</u> In order to protect the Company from unfair competition and prevent the unauthorized disclosure of its Confidential Information, Employee agrees that during his employment and for a period of one (1) year immediately following the termination of his employment, he will not compete with Company and/or the worldwide TenCate Grass organization in the south eastern United States, whether on his own behalf or on behalf of any person, firm, partnership, association, corporation, entity, enterprise or business organization, by performing job duties the same as or substantially similar to the duties that he performed for the Company during the last twelve (12) months of his employment with the Company. Employee understands that this restriction is limited to work with competitor companies of the Company and/or the worldwide TenCate Grass

organization that provide products and services similar to those offered by such on the date of Employee's termination of employment with the Company.

11. <u>Remedies for Breach.</u> If at any time Employee violates the non-competition, non-solicitation, and/or confidentiality terms of this Agreement, the Company reserves and shall have the right to file legal action against Employee, to immediately stop or recover any or all of the payments made to Employee following the termination of his employment (specifically excluding any earned but unpaid amounts under Paragraph 4 above) and to seek any other applicable damages and equitable relief. In addition, Employee acknowledges and agrees that the restrictions contained in Paragraphs 7 through 10 of this Agreement are reasonable and necessary to protect the legitimate interests of the Company, and that any violation of such paragraphs, or any part thereof, will result in immediate and irreparable harm to the Company for which a remedy at law is inadequate. Upon any such breach or threatened breach, the Company shall be entitled as a matter of right to seek injunctive relief in the US District Court for the western district of North Carolina or the State Courts located in Iredell County, NC in equity or otherwise, and to enforce the specific performance of Employee's obligations under these provisions. The rights conferred upon the Company by the preceding shall not prevent it from recovering any form of monetary damages or other equitable relief available under applicable law.

12. <u>Waiver and Tolling.</u> No waiver of any breach of this Agreement shall be construed to be a waiver as to succeeding breaches. In the event the enforceability of any of the terms of this Agreement shall be challenged in a court of competent jurisdiction and Employee is not enjoined from breaching any of the restrictive covenants, then if a court of competent jurisdiction finds that the challenged restrictive covenant(s) is enforceable, the time periods set forth herein shall be deemed tolled upon the filing of the lawsuit challenging the enforceability of this Agreement until the dispute is finally resolved and all periods of appeal have expired.

13. <u>Governing Law and Venue.</u> This Agreement is governed by and construed in accordance with the laws of the State of North Carolina without regard to its conflicts of law principles. Any dispute arising out of or relating to this Agreement shall be brought exclusively in the state or federal courts situated in North Carolina. The parties hereto submit to the personal jurisdiction of such courts and waive the defense of venue with respect to any legal proceeding filed in such courts.

14. <u>Severability.</u>  Each provision of this Agreement is intended to be severable.  If any court of competent jurisdiction determines that any provision of this Agreement is invalid, illegal or unenforceable in any respect, the remainder of this Agreement will remain in force.

EMPLOYEE ACKNOWLEDGES THAT HE HAS CAREFULLY READ THIS EXECUTIVE EMPLOYMENT AGREEMENT, AND KNOWS AND UNDERSTANDS ITS CONTENTS, AND VOLUNTARILY SIGNS IT OF HIS OWN FREEWILL.

IN WITNESS WHEREOF, the parties sign this Agreement on the dates indicated below with the intent to be bound by its terms and conditions.

EMPLOYEE

By: *[signature]*

GeoSurfaces, Inc.

By: *[signature]*
Title: Director of HR

ANNEX A

COMPENSATION and BENEFITS

Annual base pay will be $90,000, paid bi-weekly. You will also be eligible for commissions earned. Per the attached document. Commissions earned will be calculated by taking 1.75% of net invoiced Sales revenue on assigned projects once you hit $4,800,001. Sales above this amount will kick in the commission element of your compensation. The term "Sales" as used in this paragraph is synonymous with net contract value, which also includes all change orders towards the initial contract value.

The 2020 compensation also allows for up to $10,000 in a bonus as laid out in attached exhibit. This bonus is payable in March of 2021 and based on employment with GEO Surfaces – Tencate through April of 2020.

Earned commission will be paid out at the end of each calendar quarter by the 30th day of each month following the quarter as a lump sum payment. Your quarterly sales commission payments/earnings will be based solely on sales revenue from projects that have been assigned to you (by the VP of Business Development, President or designee) and that have been invoiced (not necessarily collected) during that quarter. Employer is responsible for monthly report at the end of each month to quantify total amount invoiced. Report due by the 15th day of the month following the end of the quarter. Employer reserves the right to change the commission percentage or structure for Employee. Reasons for Change include and are not limited to:

  i. All bids submitted below the targeted margin of 20% must be signed off and approved by VP of Sales and Joe Fields or Charles Dawson. Compensation on jobs below 20% will be handled on a case by case basis.
  ii. Projects that are jointly discussed (by employee, Joe Fields/Charles Dawson and VP of Sales) and agreed upon to be taken below set min. margin (currently 15%) to secure work, retain or build a reference for marketing purposes will be subject to a mutually agreed upon reduced commission rate.

Page 8 of 9

Case 1:23-cv-00545-TDS-JLW   Document 1-1   Filed 06/30/23   Page 9 of 13

      **iii.** Bad Debt: Projects that are unpaid or only partially paid by the customer- Adjustments will be made from next scheduled commission payment, after 90 days of non-payment by the customer

Additional Benefits:

- Cell phone allowance of $600/year

- Mileage: All mileage related to sales activities will be reimbursed at the IRS authorized standard mileage rate for the applicable calendar year and is to be detailed on a monthly expense report to be turned into Accounting by the 5th of each month.

- Company issued credit card – as a member of the Sales Team, you have been issued a credit card to cover travel related expenses other than gas, which is reimbursed under the previous mileage clause. Company credit card reports are due every Monday.

- Company has provided employee with a laptop computer which will remain property of Geo Surfaces during the term of employment and will be returned upon termination of employment.

EMPLOYEE

By: *[signature: Kenny Smith]*

GeoSurfaces, Inc.

By: *[signature]*
Title: Director of HR

# Kenny budget 2020

| Budget | Turf | Mondo | Track | TOTALS |
|---|---|---|---|---|
| Outdoor/Indoor Turf | $6,800,000 | $0 | $1,200,000 | $8,000,000 |
| Indoor | $0 | | | $0 |
| **Total** | | | | **$8,000,000.00** |
| | | | | |
| Salary | $90,000.00 | | | $0.00 |
| Commission Potential | $56,000.00 | See Below | | $56,000.00 |
| Bonus Potential | $10,000.00 | See Below | | |
| | | | | |
| Total Potential @ $8.0M | $156,000.00 | | | |
| Expense budget | TBD | 2019 total comp assumption is $120 - $130 @ $6.8M budget | | |
| | | **Was a draw in 2019** | | |
| **Total** | | | | |
| | | | | |
| **Commissions** | Kicks in at $4,800,001 | | | |
| Kenny Smith Key Initiatives (Product) | | $4,800,000.00 | 0.00% | $2,500.00 |
| Kenny Smith Margin Incentive | | $3,200,000.00 | 1.75% | $3,500.00 |
| | | | | $4,000.00 |
| | | | | $10,000.00 |
| **BONUS** | | | | |
| GEO Southeast performance | Division achieves 2020 Budgeted revenue/Margin % targets | | | |
| | Secure minimum 3 Iron Turf systems w/pad + 1 GEO Base system | | | |
| | Exceed overall invoiced revenue of $8.0M & + 20% margin for 2020 | | | $56,000.00 |
| **NOTES:** | | | | |
| All bids submitted under 20% must be approved by VP Sales and GEO President (Joe Fields or Charlie Dawson) | | | | |
| Strategic decisions on projects ***bid and approved*** at less than 18% are subject to be paid at a reduced commission rate approved by GEO president & VP of sales | | | | |
| Commissions are based on invoiced (realized) amounts from 1.1.20 to 12.31.20 | | | | |
| Focus for 2020 will be Iron turf - indoor/outdoor turf including baseball - softball, and GEO products where possible | | | | |
| | | | | |
| Commissions are based on invoiced (realized) amounts from 1.1.20 to 12.31.20 | | | | |
| | | | | |
| **Opportunity example** | **Situation assessment** | **Steps to Take** | **Commission** | |
| 1. Strategic project - Influential | Team believes bid must be more aggressive than company target | Pre-Approval from JF/CD | Negotiated | |
| 2. Multi-field, public bid | Team believes bid must be bid more aggressive than company target | Pre-Approval from JF/CD | Reduced | |

Kenny Smith 11/25/2019

Russell 1/8/20
DHR

AMENDMENT

This First Amendment ("Amendment") to that certain Sales Employment Agreement ("Agreement") effective October 1, 2019 by and between GeoSurfaces Inc. (dba Medallion Sports Surfaces), a Delaware corporation (the "Company"), and Kenneth D. Smith ("Employee") residing at 7135 Kenbridge Drive, Clemmons, NC 27012 is made this 12th day of December, 2022.

Company and Employee desire to revise the Agreement as provided in this Amendment.

In consideration of the Company's continued employment of Employee and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Company and Employee agree as follows:

1. The Agreement is amended by striking Section 2.a.iv. and replacing it with the following:

iv. *Marketing and Selling products manufactured by Geosurfaces and its affiliates (i.e. the world-wide TenCate Grass organization);*

2. ANNEX A to the Agreement is struck in its entirety and replaced with the following:

*ANNEX A*

*COMPENSATION and BENEFITS*

*Annual base pay will be $105,000, paid bi-weekly.*

*You will also be eligible for commissions on sales of the following categories of products:*

| Product | Commission rate/ft$^2$ |
|---|---|
| Turf - Tencate | $0.032 |
| Turf - Shaw | $0.016 |
| Pad - Geo Product | $0.012 |
| Infill - Geo Product | $0.008 |
| GeoBase | $0.012 |
| Stone Base | $0.004 |
| Mondo Surfacing (Only) | $0.024 |
| Urethane Surface (Only) | $0.016 |
| Latex Surface (Only) | $0.008 |
| Asphalt | $0.008 |

*Executive will also receive an $12,000 bonus if GeoSurfaces SouthEast exceeds annual budgeted revenue.*
*Any fully executed sales of turf before January 1, 2023 will be commissioned at the 2022 commission rate at the time the commission is paid. Any current Shaw specified jobs rolling over into the 2023 calendar year will be compensated at the Turf-TenCate commission rate. A list of open projects will need to be provided.*

*This commission structure will commence on January 1, 2023 and run on a calendar year basis. The commission will calculated upon sales revenue actually received by GeoSurfaces from each completed job that has been assigned to you (by the VP of Business Development, President or designee). Commission will be payable quarterly by the 30th day of the month following the end of the calendar quarter as a lump sum payment. Employer reserves the right to change the commission percentage or structure for Employee. Reasons for Change include and are not limited to:*

  i. *All bids submitted below the targeted margin of 20% must be signed off and approved by Joe Fields or Charles Dawson. Compensation on jobs below 20% will be handled on a case by case basis. Any approved jobs that have a targeted margin of over 15% and the job margin falls below 15 % when the job is completed, will not be paid commission.*

  ii. *Projects that are jointly discussed (by employee, Joe Fields/Charles Dawson and VP of Sales) and agreed upon to be taken below set min. margin ( currently 15%) to secure work, retain or build a reference for marketing purposes will be subject to a mutually agreed upon reduced commission rate.*

  iii. *Bad Debt: Projects that are unpaid or only partially paid by the customer Adjustments will be made from next scheduled commission payment, after 90 days of non-payment by the customer.*

*Additional Benefits:*

- *Cell phone allowance of $600/year*

- *Mileage: All mileage related to sales activities will be reimbursed at the IRS authorized standard mileage rate for the applicable calendar year and is to be detailed on a monthly expense report to be turned into Accounting by the 5th of each month.*

- *Company issued credit card - as a member of the Sales Team, you have been issued a credit card to cover travel related expenses other than gas, which is reimbursed under the previous mileage clause. Company credit card reports are due every Monday.*

- *Company has provided employee with a laptop computer which will remain property of GeoSurfaces during the term of employment and will be returned upon termination of employment.*

In all other respects, the Agreement shall continue in force as written.

Agreed to this 12th day of December, 2022.

*Kenneth Smith*
Kenneth Smith　　　　　　　　　　　　　　　GeoSurfaces, Inc.
Employee　　　　　　　　　　　　　　　　　Charles Dawson, President